# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PLASTIC OMNIUM ADVANCED
INNOVATION AND RESEARCH,

    Plaintiff,

    v.

DONGHEE AMERICA, INC. and
DONGHEE ALABAMA, LLC,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 16-187-LPS-CJB

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

---

**DEFENDANTS DONGHEE AMERICA, INC. AND DONGHEE ALABAMA, LLC'S
OPENING BRIEF IN SUPPORT OF *DAUBERT* MOTION TO
<u>EXCLUDE THE TESTIMONY OF DAVID A. HAAS</u>**

OF COUNSEL:

Alyssa Caridis
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
(213) 629-2020

Nicholas H. Lam
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000

Vickie Feeman
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendants
Donghee America, Inc. and
Donghee Alabama, LLC*

Dated: February 2, 2018
Public version dated: February 9, 2018

5616885

**TABLE OF CONTENTS**

**Page**

I.     SUMMARY OF ARGUMENT ........................................................................ 1

II.    BACKGROUND ...................................................................................... 1

      a.     Nature and Stage of Proceedings ............................................. 1

      b.     Statement of Facts ..................................................................... 2

      c.     Legal Standard .......................................................................... 3

III.    ARGUMENT ........................................................................................... 4

      a.     A $█████ Royalty Is Not Based On Sufficient Data or Facts and Should Be Excluded ....................................................... 4

            i.      Mr. Haas' Royalty Rate Is Not Justified By the $█ License ..................... 5

            ii.     Mr. Haas' Royalty Rate Depends on An Unconsummated Offer █ ████████████████████████████████ . .................... 6

            iii.    Mr. Haas' New █% Royalty Rate Is Improper And Should Be Excluded. ................................................ 9

      b.     Mr. Haas' Expert Report Reflects Only a Black-Box Analysis that Is Neither Reliable Nor Fit to the Issues in the Case. ............... 10

      c.     Mr. Haas Has Violated Federal Circuit Law By Failing to Apportion. .............. 13

      d.     POAIR Cannot Rely On Explanations Or Opinions Not Disclosed In the Expert Reports. ............................... 15

IV.    CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*AVM Techs., LLC v. Intel Corp.*,
    No. CIV.A. 10-610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013) .........................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ......................................................................................2, 4, 5, 17

*ePlus, Inc. v. Lawson Software, Inc.*
    764 F. Supp. 2d 807 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012) ...................5, 6, 10

*Ericsson, Inc. v. D-Link Systems, Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) .........................................................................14, 15

*Exmark Mfg. Co., Inc. v. Briggs and Stratton Power Products Gp., LLC*,
    2018 WL 385497 (Fed. Cir. 2018) .................................................................... *passim*

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997) ........................................................................................5

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) .............................................................4, 10, 11

*Hanson v. Alpine Valley Ski Area, Inc.*,
    718 F.2d 1075 (Fed. Cir. 1983) .......................................................................10

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
    347 F. Supp. 2d 129 (D. Del. 2004) ..................................................................4, 16

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. CV 12-193-LPS, 2017 WL 478565 (D. Del. Jan. 31, 2017) ..........................................17

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..........................................................................10

*Lexington Ins. Co. v. Horace Mann Ins. Co.*,
    No. 11 C 2352, 2015 WL 5174159 (N.D. Ill. Aug. 27, 2015) .............................................18

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .......................................................................15

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977) ........................................................................16, 17

# TABLE OF AUTHORITIES

Page(s)

*MiiCs & Partners, Inc. v. Funai Elec. Co.*,
    No. CV 14-804-RGA, 2017 WL 6268072 (D. Del. Dec. 7, 2017) ........................................6, 7

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2011 WL 6055505 (N.D. Cal. Dec. 6, 2011) ....................................8

*Reed v. Binder*,
    165 F.R.D. 424 (D.N.J. 1996) ............................................................................................3

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ........................................................................................6, 8

*RLI Ins. Co. v. Indian River Sch. Dist., No.*
    CIV. A. 05-858-JJF, 2007 WL 4292109 (D. Del. Dec. 4, 2007) .........................................16

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    No. 08-CV-127-BBC, 2010 WL 2518853 (W.D. Wis. June 18, 2010) .................................18

*Schneider ex rel. Estate of Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003) .............................................................................................4

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
    No. CV 12-1013-RGA, 2015 WL 410342 (D. Del. Jan. 29, 2015) ....................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008)..................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .........................................................................................13

*Virnetx, Inc., v. Cisco Systems, Inc.*,
    767 F.3d 1313 (Fed. Cir. 2014) .....................................................................................6, 13

**Other Authorities**

Federal Rules of Civil Procedure
    26.................................................................................................................. *passim*
    37.....................................................................................................................16

Federal Rules of Evidence
    702...........................................................................................................4, 9, 10, 11
    703..............................................................................................................9

## I.    SUMMARY OF ARGUMENT

Plastic Omnium Innovation and Research's ("POAIR") damages expert, David Haas, opines that if Donghee is found to infringe it should pay a reasonable royalty of $█ per accused fuel tank.[1] That exorbitant amount—plucked out of thin air—is not supported by any evidence. Mr. Haas does not cite a single patent license agreement that comes close to bearing a royalty of that amount. The one U.S. patent license he does mention bears a royalty of just $█ per unit. He principally relies on a *rejected* █ licensing *proposal* █ █—not even an executed license—and then without explanation or rationale arbitrarily █ the rejected rate. His expert report reaffirms the arbitrary nature of his conclusion; it provides no explanation of how he arrived at $█ per tank, how he jumped from a royalty of $█ to $█, or how his number bears any relationship to the facts in this case. And then, if these were not grounds enough to reject his testimony, Mr. Haas violated established Federal Circuit law by failing to apportion between the allegedly infringing features of the accused tanks and the many non-infringing features.

Mr. Haas's damages opinion is not rational, reliable, or based on sufficient facts or data. Donghee respectfully requests that the Court exercise its gate-keeping responsibility and bar Mr. Haas from presenting his damages theory to the jury.

## II.    BACKGROUND

### a.    Nature and Stage of Proceedings

POAIR asserts that Donghee America, Inc. and Donghee Alabama LLC (collectively, "Donghee") infringe seven patents. POAIR seeks reasonable royalty damages from Donghee. Donghee now moves to exclude the improper opinions of POAIR's damages expert.

---

[1] Mr. Haas reaches this conclusion even though Donghee █ on the accused tanks.

**b.    Statement of Facts**

On November 13, 2017, pursuant to the parties so-ordered Stipulation to Amend Scheduling Order, D.I. 201, POAIR served Mr. Haas' opening expert report. D.I. 202. In that report, Mr. Haas opined that POAIR is entitled to $█████ in damages. Ex. A (Haas Rpt.) at 17.[2] He reached that opinion by (i) concluding that the parties would have agreed to a $█ per-unit royalty payment in a hypothetical negotiation, (ii) multiplying the $█ per-unit royalty by the total number of "LFa unit sales" and "future N3 unit sales," and (iii) discounting future damages by 10%. *Id.* at ¶¶ 14-17. Mr. Haas states that his $█ rate is made up of $█ for what he calls the Core TSBM patents, $█ for the Deformable Pipe patent, and $█ for the Rivet Snapping patents. *Id.* at ¶155. (Mr. Haas provides no explanation of how he came up with this division. *Id.*) In his recitation of the *Georgia Pacific* factors, Mr. Haas relies on a $█ license to a group of patents (*Id.* at ¶79 ), a █% *rejected* noncomparable ████ license offer (*Id.* at ¶¶75-78), and a █% license that ████████████████████████████████. *Id.* at ¶¶92-93. Even if all of these were valid data points (they are not), Mr. Haas includes no discussion for how he gets from $██ %, or █% to reach $█ per tank.

On December 13, 2017, Donghee provided POAIR with Krista Holt's rebuttal report. D.I. at 205. Ms. Holt's rebuttal report responded to Mr. Haas' opening report. On January 8, 2018, POAIR served Mr. Haas' reply report. D.I. at 208. The reply report consisted solely of responses to Ms. Holt's critiques. *See* Ex. B (Haas Reply Rpt.) (the Haas Rpt. and Haas Reply Rpt. are collectively referred to as "the Reports").

On January 19, 2018, Donghee took the deposition of Mr. Haas. Immediately after

---

[2] All exhibits cited herein are exhibits to the Declaration of Andrew J. Kim in Support of Donghee America, Inc. and Donghee Alabama, LLC's *Daubert* Motion to Exclude the Testimony of David A. Haas, dated February 2, 2018.

counsel for Donghee finished her questioning, counsel for POAIR proceeded to ask Mr. Haas "██████████████████████████████████████████" and "…████████████ ███████." Ex. C (Haas Dep. Tr.) at 185:23-186:1. In response, Mr. Haas provided six transcript pages-worth of uninterrupted narrative. *Id.* at 186:7-192:22. During this scripted monologue, Mr. Haas disclosed several new analyses for the very first time. For example, he explained that his $██ per unit royalty was, in actuality, a ██% royalty rate. *Id.* Having never before expressed a royalty base in terms of dollars, he also opined that the royalty base should be considered "██████ $███" per unit. *Id* at 191:9-10.

      **c.**    **Legal Standard**

Federal Rule of Civil Procedure 26(a)(2)(B) "requires an expert witness to provide a report containing: 'a complete statement of all opinions the witness will express and the basis and reasons for them.'" *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. CV 12-1013-RGA, 2015 WL 410342, at *2 (D. Del. Jan. 29, 2015) (quoting Fed. R. Civ. P. 26), *aff'd sub nom. Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, 675 F. App'x 974 (Fed. Cir. 2017). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). This Court has held:

> persons retained or specially employed to provide expert testimony . . . must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed . . . . [T]he report, *which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the*

> *testimony to be given by the witness . . . .*

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 129, 135 (D. Del. 2004) (quoting Fed. R. Civ. P. 26(a)(2)(B), Committee Notes, 1993 Amendments)).

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), expert testimony properly disclosed under Rule 26(a) must also be reliable and fit to the issues in the case. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003). Reliability means testimony that is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'" and "the expert must have 'good grounds' for his or her belief." *Id*. Testimony that "fit[s] the issues in the case" means testimony that is "relevant for the purposes of the case" that "assist[s] the trier of fact." *Id*. In the patent context, damages experts "must not only analyze the applicable [*Georgia-Pacific*] factors, but also carefully tie those factors to the proposed royalty rate. *Exmark Mfg. Co., Inc. v. Briggs and Stratton Power Products Gp., LLC*, 2018 WL 385497, at *11 (Fed. Cir. 2018) (citing *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). Experts may not "merely address[] the *Georgia-Pacific* factors in light of the facts and then pluck [a] royalty rate out of nowhere." *Id*.

## III.  ARGUMENT

### a.  A $▮▮ Royalty Is Not Based On Sufficient Data or Facts and Should Be Excluded

Mr. Haas' royalty rate opinions are not justified by, nor based on, sufficient facts or data. In his report, Mr. Haas cites a single executed United States patent license. But without reason or explanation, he proffers an overall proposed royalty rate ▮▮ times more than the one provided for in that license. Next, Mr. Haas' rate opinion is entirely dependent on ▮▮▮▮▮ ▮▮▮▮ the value of an unconsummated and non-comparable ▮▮ license. This is not

4

permissible evidence on which to base an expert opinion. And, to make matters worse, during his deposition, Mr. Haas explained that his opinions are actually predicated on an arbitrary ███████ of ███████████████ that unconsummated ██████ license. Even if the Court were to credit the belated explanation provided during his deposition, Mr. Haas' opinions are still hopelessly arbitrary, unreliable, and not supported by the case law.

### i. <u>Mr. Haas' Royalty Rate Is Not Justified By the $█ License</u>

In his expert report, Mr. Haas cites to a single executed United States patent license. Ex. A (Haas Rpt.) at ¶¶67-74. Mr. Haas concludes that the reasonable royalty "would need to be higher than the approximately $█ per unit royalty" set forth in that license. *Id.* at ¶79. There is absolutely no explanation in his Reports to describe how Mr. Haas got from $█ per tank to $█ per tank. In addition, to the extent Mr. Haas intended only to apply the $█ per tank license to the ███████████ asserted patents (which he opines would command $█ out of the $█), Mr. Haas provides no explanation for ███████████ of the only executed license to reach his conclusion.

The Supreme Court has reiterated that "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). The court in *ePlus, Inc. v. Lawson Software, Inc.* (764 F. Supp. 2d 807, 814-816 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012)), relied on *Joiner* when striking down opinion evidence directly akin to that provided by Mr. Haas. There, the damages expert opined that the *Georgia Pacific* factors would suggest "some unarticulated quantum of 'higher' royalty rate" than previous agreements. *Id.* at 815. The court struck the opinion because the expert provided no explanation "at all how it was that the application of any one or all of those factors would permit an increase in the base royalty rate of approximately 100%." *Id.* Mr. Haas' opinions suffer from the same flaws. He takes the only executed United States patent license and either ██████ or

multiples it by ███ with absolutely no explanation.  His opinions should be struck.  *Id.*

### ii.    Mr. Haas' Royalty Rate Depends on An Unconsummated Offer by ████ to Enter Into A ██████████ License With ████████.

"[D]istrict courts performing reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies *other* than the patent[s] in suit" and "must account for differences in the technologies and economic circumstances of the contracting parties."  *Virnetx, Inc.*, *v. Cisco Systems, Inc.,* 767 F.3d 1313, 1330 (Fed. Cir. 2014) (quotations and internal brackets omitted).  Specifically, courts and experts "must consider licenses that are commensurate with what the defendant has appropriated.  If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

Mr. Haas' opinions rely on an unaccepted proposal for a ██████████ license of ████████████████████████.  The rights conveyed by this rejected proposal are in no way commensurate with what Donghee allegedly has appropriated.  *See id.*  And to compound the problem, the fact that the proposal was never accepted—it was merely a contemplated proposal ████████—means the offer has no probative value to the hypothetical negotiation at hand.  *See MiiCs & Partners, Inc. v. Funai Elec. Co.*, No. CV 14-804-RGA, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017) (rejecting expert opinion based on license offer to a third party).  In fact, there is no evidence that ██████ proposal was ever even communicated to ████████.  Allowing a patentee to use ████████████ estimates of the value of ██████ is a prime example of the inflation of reasonable royalties that the Federal Circuit has warned against.

Mr. Haas opines that "the reasonable royalty rate for the Patents-in-Suit would need to be higher than the ██% balancing rate *preliminarily discussed* for a ██*license* between ████

█████████████████████████████████████████████████.” Ex. A (Haas Rpt.) at ¶79 (emphasis added). This conclusion is based on a single document: ████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████. Ex. D (███████████). ████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████. *Id.* at ███. ███ █████████████████████████████████████████████████████████████ █████████████████████████████████ *Id.* at ███. ████████ █████████████████████████████████████████. *Id.* Based on this document, Mr. Haas concludes that Donghee and POAIR would have agreed to at least a ███% royalty rate in a hypothetical negotiation. Ex. A (Haas Rpt.) at ¶79.

The ███% rate in the ██████████████████ represents an unconsummated license offer that must be excluded. Courts routinely exclude opinions relying on unconsummated offers because, while certain proposed licenses "may have some value" in the analysis, "[t]heir evidentiary value is limited, however, by, *inter alia*, the fact that patentees could artificially inflate the royalty rate by making outrageous offers." *MiiCs & Partners, Inc.*, 2017 WL 6268072 at *4 (quoting *Whitserve*, 694 F.3d at 29-30) (excluding expert opinions based on unconsummated offer). The potential for outrageous and imaginary royalty rates is even greater where, as here, the ███% rate was expressed only in ████████████████ with no evidence that it was even conveyed to █████. Ex. C (Haas Dep. Tr.) at 66:18-67:17 ("███████████ ███████████████████████████████████████████████████████████ ██████████████████████████").

Additionally, the proposed ███ license is so far afield from the hypothetical negotiation

that it is non-comparable and as such must be excluded.  Mr. Haas acknowledged in his deposition that the ███% rate contemplated ███████████████████████████████ ██████, which included ███████████████ than are at issue here.  Ex. C (Haas Dep. Tr.) at 65:21-66:17.  It is well settled that "[d]amages experts cannot use noncomparable licenses, with little relationship to the claimed invention or parties-in-suit, as a basis for calculating reasonable royalties."  *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 6055505, at *8 (N.D. Cal. Dec. 6, 2011) (citation omitted); *see, e.g.*, *AVM Techs., LLC v. Intel Corp.*, No. CIV.A. 10-610-RGA, 2013 WL 126233, at *3 (D. Del. Jan. 4, 2013) (excluding damages testimony subject to evidentiary hearing because expert establish neither that "the scope of the prior license agreements . . . is comparable to the scope of the license the parties would negotiate for the patent-in-suit" nor that "the technology and value of the patents licensed in the prior agreements are comparable"; "a patentee may not argue that prior licenses granting rights to entire portfolios of patents are comparable to a license that the parties would have negotiated for a single asserted patent").  The Federal Circuit's seminal case in this area is *ResQNet.com*.  In that case, the Federal Circuit rejected a patent owner's attempt to inflate the reasonable royalty rate by relying on irrelevant and noncomparable license agreements.  The Federal Circuit held that courts and experts "must consider licenses that are commensurate with what the defendant has appropriated."  *ResQNet.com*, 594 F.3d at 872.  Here, Donghee is accused of infringing, at most, U.S. patents from three technologies.  This is a far cry from the ███████ rights to ███████████████████████████████ that was contemplated by the ███ license.

Finally, the ███% rate itself should be excluded under Federal Rule of Evidence 703 because its probative value in assisting the jury to evaluate the expert's opinion is grossly outweighed by its ███████ source.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-

02123 WHA, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) (citing FRE 703, holding that "no professional should reasonably rely on such a rigged and biased source of information for any materially important fact to his or her opinion…" and cautioning courts from allowing hearsay statements "to sail into evidence when the truth might be materially different").

It is undisputed that the ██% valuation 1) was never consummated, 2) was for ████████ ████, and 3) covered ████████████████████████████████████. Federal Circuit precedent makes clear that such an "offer" cannot be used to calculate a reasonable royalty, and the Court should strike any reliance on it. And because, as Mr. Haas made clear in his deposition, his ultimate conclusion of $█ wholly depends on this ██% "offer" (*see infra* at 9) the entirety of his damages opinions fall once the ██% "offer" is struck.

### iii. Mr. Haas' New ██% Royalty Rate Is Improper And Should Be Excluded.

At his deposition, Mr. Haas opined for the first time that his $█ per-unit royalty was a product of multiplying an "████████" $██ per unit royalty base by a █% royalty rate. And that the █% royalty rate was derived by ██████ the estimated value of the unconsummated ████ license and adding that to the royalty rate paid by Donghee for a license to ████████ ████████████████████ Even if the Court to were to consider these untimely opinions (*see infra* at 15-18), they should be excluded under Rule 702.

As discussed above, Mr. Haas should be precluded from relying on ██████ estimated value of the unconsummated ███ license. *See supra* 6-9. Putting that aside, in order to arrive at his █% figure, Mr. Haas ████████████% estimated value. Ex. C (Haas Dep. Tr.) at 188:18-189:17. He claims he does this because the ████████████████████████ ████████████████████████████████████Ex. D ████████████████ ██. But the premise of the hypothetical negotiation is to determine what the parties would have

agreed to *outside the threat of litigation. See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) ("The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia–Pacific,* the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee . . . ."); *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) (recognizing that "license fees negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation'" (quoting *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1164 n.11 (6th Cir. 1978))). By relying on what ███████████ damages might be *at trial*, Mr. Haas ignores the very construct of the hypothetical negotiation.

Mr. Haas' ██% opinion should be excluded under Rule 702 for the same reasons the $█ should be excluded—it is neither a product of reliable methodologies nor a conclusion that is fit to the issues in this case. While "exact, to-the-penny, quantification is not required," no case law "approves the use of generalized application of the *Georgia-Pacific* factors to double the baseline royalty rate, either with or without articulation of the extent to which each factor supported such an increase." *ePlus, Inc.*, 764 F. Supp. 2d at 816.

**b.**    **Mr. Haas' Expert Report Reflects Only a Black-Box Analysis that Is Neither Reliable Nor Fit to the Issues in the Case.**

Mr. Haas arrives at a $█ per-unit royalty rate through a black-box methodology that runs utterly afoul of Rule 702's foundational requirement that experts must "sufficiently [tie the expert testimony on damages] to the facts of the case." *Exmark Mfg. Co., Inc.*, 2018 WL 385497 at *11 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). Experts "must not only analyze the applicable factors, but also carefully tie those factors to the proposed royalty rate." *Id.* at 12. Experts may not "merely address[] the *Georgia-Pacific* factors in light of the

facts and then pluck[] the royalty rate out of nowhere." *Id*. Mr. Haas does just that.

Mr. Haas' Reports provide no starting point for a reasonable royalty rate. Instead, his Reports discusses each *Georgia Pacific* factor with a "summary" for some of the factors. Mr. Haas' *Georgia Pacific* conclusions amount to the following:

- *GP 1*: A reasonable royalty must be higher than the $█ rate from an executed license and the ██% estimate of the █████ license value discussed above. Ex A (Haas Rpt.) at ¶79.

- *GP 2*: A reasonable royalty must be higher than the █% rate from an executed license to █████████████████████████████. *Id.* at ¶93

- *GP 3*: No conclusion given. *Id.* at ¶94.

- *GP 4*: No conclusion given. *Id.* at ¶¶95-96.

- *GP 5*: A reasonable royalty rate between competitors would be higher than a reasonable royalty rate between non-competitors. *Id.* at ¶101.

- *GP 6*: The parties would have an understanding that ██████████████████ ██████████████████ on convoyed sales items. *Id.* at ¶104.

- *GP 7*: No conclusion given. *Id.* at ¶¶105-109.

- *GP 8*: ████████████████████████████████████████ ████████████████████████████████████████ ██████. *Id.* at ¶¶110-122. No conclusion given. *Id.*

- *GP 9 & 10*: ████████████████████████████████████ ██████. *Id.* at ¶¶123-138. No conclusion given. *Id.*

- *GP 11*: Discussed elsewhere. *Id.* at ¶139.

- *GP 12*: No relevant information found. *Id.* at ¶140.

- *GP 13*: ████████████████████████████████████████

████████████████████████████.  *Id.* at ¶¶141-142.  ████████████

██████  *Id.* at ¶143.  No conclusion given.

- *GP 14*: No conclusion given.  *Id.* at ¶144.

Mr. Haas then provides a recap of various factors discussed above (*id.* at ¶¶146-153), and

concludes, without explanation, that a reasonable royalty rate would be $ █ per tank.  *Id.* at ¶155.

Mr. Haas' analysis is directly akin to the expert opinions excluded by the Federal Circuit

in *Exmark Mfg. Co.*  2018 WL 385497 at *12.  There, the Federal Circuit explained that:

> After a discussion of each of the *Georgia Pacific* factors, including the benefits of
> the patented technology, sales and profitability, and the competitive relationship of
> the parties, Exmark's expert concluded with little explanation that [the parties]
> would have agreed to a 5% reasonable royalty rate . . . . Nowhere in her report,
> however, did she tie the relevant *Georgia Pacific* factors to the 5% royalty rate or
> explain how she calculated a 5% royalty rate or using these factors.  To be
> admissible, expert testimony opining on a reasonable royalty must "sufficiently [tie
> the expert testimony on damages] to the facts of the case.  If the patentee fails to tie
> the theory to the facts of the case, the testimony must be excluded."

*Id.* at *11 (quoting *Uniloc USA, Inc. v.  Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)).

Indeed, Mr. Haas neglects to offer in his Reports any basic explanation of which numbers

he multiplied or adjusted, and in which direction, to arrive at a $ █ per unit royalty.  The Reports

consider three quantitative data points from allegedly related licenses or offers for a license:  $ █,

█ %, and █ %.  But Mr. Haas fails to provide *any* explanation in his reports as to how he gets

from a *percentage* royalty rate from the "license history" to a $ █ *per unit* rate here.  A percentage

royalty rate necessarily requires a revenue base in order to compute a dollar figure.  That revenue

base is wholly absent from Mr. Haas' reports.

The Federal Circuit, through *Uniloc* and its progeny, has made clear that damages expert

opinions must be specifically tied to the facts of the case.  Mr. Haas ignores this mandate and

seemingly picks his $ █ rate out of thin air.  His opinions should be struck.  *Exmark Mfg. Co.*,

2018 WL 385497 at *11 ("When performing a *Georgia Pacific* analysis, damages experts must

not only analyze the applicable factors, but also carefully tie those factors to the proposed royalty rate.").

    **c.**    <u>**Mr. Haas Has Violated Federal Circuit Law By Failing to Apportion.**</u>

Mr. Haas' failure to apportion is another fundamental flaw in his opinions. On the one hand, he acknowledges in deposition that the accused products " ███████████████████ ███████████████████████████████████████." Ex. C (Haas Dep. Tr.) at 14:21-15:2. Yet on the other, Mr. Haas makes no attempt to apportion or even take into consideration the value of the unpatented "███████████████████████" in calculating his damages figure.

Mr. Haas' failure to apportion violates well-established Federal Circuit law, which has become the cornerstone for controlling runaway damages opinions. The Federal Circuit has made clear that where multi-component products are involved, the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. *Virnetx, Inc.*, 767 F.3d at 1326 (Fed. Cir. 2014) ("[A] patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features.") "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). "[A]pportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'" *ExMark Mfg. Co.*, 2018 WL 385497, at *10 (quoting *Ericsson*, 773 F.3d at 1226).

There can be no doubt that Mr. Haas applied his royalty to the entirety of the accused

products; his Reports do not even acknowledge the many non-patented features, let alone assign any value to them. In his opening report, Mr. Haas explains that he is using a *per-tank* royalty base (as opposed to a royalty base consisting of the amount of *revenue* associated with a product). Ex. A (Haas Rpt.) at ¶61. Mr. Haas confirmed during his deposition that he counted every single accused fuel tank assembly unit in his royalty base. Ex. C (Haas Dep. Tr.) at 18:15-19:11, 20:6-21:12. Although Mr. Haas calls this an "apportioned" base, his methodology does nothing to account for the unpatented features. During deposition, Mr. Haas explained that he properly apportioned because " ████████████████████████████████████

████████ " *Id.* at 21:5-6. Again, counting the "number of acts of infringement" does nothing to account for the value of unpatented technology in the accused product.

Mr. Haas sidesteps the conventional apportionment method of reducing a *revenue* royalty base by using a royalty base of number of units. While Mr. Haas labels his base "apportioned", using a base that consists of 100% of the accused products completely ignores the Federal Circuit's requirements that patentees cannot collect damages on non-infringing technology. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). Using a base of all accused units (instead of all accused revenue) does not relieve Mr. Haas of his duty to account for the value of the unpatented features or components of the accused process.

Not only did Mr. Haas fail to properly apportion the royalty base, but he also failed to "adjust[] the royalty rate so as to discount the value of a product's non-patented features." *Ericsson*, 773 F.3d at 1226. There is no mention of unpatented features in his Reports, let alone an analysis of the value of those unpatented features and how such value would affect a royalty rate. Mr. Haas' unapportioned damages opinions are unreliable and impermissible under controlling law. In the exercise of its gatekeeping responsibilities, the Court should strike and

exclude them.

**d.    POAIR Cannot Rely On Explanations Or Opinions Not Disclosed In the Expert Reports.**

Actions taken by Mr. Haas and POAIR's counsel during deposition make clear that Mr. Haas intends to testify at trial on opinions and analysis not found anywhere in his reports. Such an ambush runs directly afoul of the Federal Rules of Civil Procedure and should not be allowed at this stage of the case.

As outlined above, in his Reports, Mr. Haas concluded that Donghee would have agreed to pay POAIR running royalties of $█ per-unit. *See supra* at 10-13. The Reports, however, were silent as to the methodology by which Mr. Haas arrived at his $█ per-unit conclusion. *Id.*

During deposition, in a transparent attempt to pack the record, POAIR's counsel elicited a six-page narration of Mr. Haas' opinions. Ex. C (Haas Dep. Tr.) at 185:23-192:22 (Mr. Haas redirect testimony in response to POAIR's question, "███████████████████████ ██████████████████████████████████████████████████████████ ████████████████████" and "████████████████████████"). For the first time, Mr. Haas proceeded to provide brand new analyses supporting his damages conclusion that a hypothetical negotiation would have yielded a $█ per-unit running royalty. These new analyses include:

- The revenue pool associated with Mr. Haas' royalty base was "████████ $████ per unit," *id.* at 191:3-10,

- The royalty rate should be █%, derived by adding ████ times the royalty rate from an unconsummated ████ offer (█%) to a royalty rate from a different license (█%), *id.* at 188:18-189:17, and

- The royalty rate should be limited to a $██ per-unit ceiling, which represents Plastic Omnium's anticipated lost profits from sales of the entire fuel tank assembly, including non-infringing components and accessories, *id.* at 190:19-21.

Mr. Haas then confirmed that he did not disclose the foregoing analyses in his report.  *Id.* at

198:19-199:12 (confirming that the $██ per-unit royalty base was not disclosed in the Report);

*id.*at 193:17-195:17 (same for ██% royalty rate); *id.*at 205:5-206:5 (same for $██ per-unit ceiling).

Under Rule 37(c)(1), "a party that fails to disclose information required by Rule 26(a)

cannot use that evidence unless the party had 'substantial justification' or the failure was

harmless."  *RLI Ins. Co. v. Indian River Sch. Dist., No*. CIV. A. 05-858-JJF, 2007 WL 4292109,

at *3 (D. Del. Dec. 4, 2007) (quoting Fed. R. Civ. P. 37(c)(1)); *see, e.g., Honeywell Int'l, Inc*.,

347 F. Supp. 2d at 135 (excluding expert's "conclusory assertions of infringement" under Rule

26(a)).  This Court considers the following *Pennypack* factors in determining whether a Rule

26(a) violation was substantially justified or harmless:  "(1) the importance of the information

withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the

likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation

for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the

evidence."  *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. CV 12-193-LPS, 2017 WL

478565, at *1 (D. Del. Jan. 31, 2017) (citing *Meyers v. Pennypack Woods Home Ownership

Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)).  The *Pennypack* factors unanimously favor

exclusion here.

Under the first factor, Mr. Haas' new analyses—that the royalty base should be "██

$██" per unit, and the royalty rate should be ██% thereof and less than $██—are ancillary to his

damages opinion at large.  Any analyses that were properly disclosed in Mr. Haas' Reports, such

as his $██ per-unit royalty rate and the reasons supporting it, would be admissible to the extent

they survive Donghee's *Daubert* motion and other evidentiary challenges at trial.

As to the second factor, POAIR disclosed Mr. Haas' new analyses only three days before

the close of expert discovery, in the form of scripted redirect testimony in the waning moments of his deposition. The prejudice and surprise to Donghee is immense. From the moment POAIR served Mr. Haas' opening report on November 13, 2017, Donghee and its experts have spent considerable resources strategizing against and rebutting Mr. Haas' damages opinions under the assumption that, as required by Rule 26, his report contained "a complete statement of all opinions the witness will express and the basis and reasons for them."

The third and fourth factors similarly favor exclusion. Trial is less than five months away. The only possible way to cure prejudice to Donghee would be to delay trial and restart expert discovery in order to provide Donghee a full opportunity to rebut Mr. Haas' new analyses. This would mean granting Donghee leave to file a second rebuttal report, resulting in new reports, a new round of expert depositions, and likely new *Daubert* motions. Donghee, whose reports complied with Rule 26, would be strategically prejudiced and would incur significant costs in conducting expert discovery a second time.

Finally, the fifth and sixth factors favor exclusion because there cannot be a reasonable explanation for POAIR's willful belated disclosure of Mr. Haas' new analyses. Mr. Haas testified in his deposition that his new analyses were in fact developed well in advance of his opening expert report. Ex. C (Haas Dep. Tr.) at 202:24-203:3 (" ███████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████ "). Yet the Reports made no mention of these new analyses, under what methodologies such figures were calculated, nor why the record justifies using such numbers. *See, e.g.*, *id.* at 199:23-200:7 (" ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

██████████████████████████████████████████
█████████").

Litigants cannot purposefully withhold the full extent of their expert's opinions until the closing moments of a deposition for a strategic advantage. *Ruppert v. Alliant Energy Cash Balance Pension Plan*, No. 08-CV-127-BBC, 2010 WL 2518853, at *2 (W.D. Wis. June 18, 2010) (granting motion to exclude deposition testimony regarding an undisclosed method of calculating damages that went beyond the scope of the expert's report because "to allow testimony on a matter beyond the scope of the expert report would be improper"); *see also Lexington Ins. Co. v. Horace Mann Ins. Co.*, No. 11 C 2352, 2015 WL 5174159, at *8 (N.D. Ill. Aug. 27, 2015) (noting that defendant "determined the scope" of expert's opinions when serving his report and rejecting defendants attempt "to introduce new opinions from [the expert] at his deposition under the guise of it being a 'supplement' to his initial report"). The way this testimony came out – in response to a vague open ended question during redirect – makes clear that Mr. Haas knew his reports were deficient and that he needed to try to "pack the record" in order to justify his outrageous damages demand. There can be no other explanation for how the testimony was elicited. There is neither substantial justification nor harmlessness, and Mr. Haas' new analyses should be excluded.

IV.     **CONCLUSION**

For the foregoing reasons, Donghee respectfully requests that the Court exclude Mr. Haas' opinions in their entirety.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Alyssa Caridis
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
(213) 629-2020

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

Nicholas H. Lam
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000

*Attorneys for Defendants*
*Donghee America, Inc. and*
*Donghee Alabama, LLC*

Vickie Feeman
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

Dated:  February 2, 2018
Public version dated: February 9, 2018
5616885